**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 9:21-cv-80466-RAR

JASON GOLDSTEIN, *individually and*
*on behalf of all others similarly situated*,

    Plaintiff,

  vs.


FANDANGO MEDIA, LLC,

    Defendant.
_____/


**<u>DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

    I.   Fandango's Guest Checkout Process ................................................................... 3

    II.  The Arbitration Provision and Class Action Waiver ...................................... 5

ARGUMENT ........................................................................................................................ 7

    I.   Plaintiff Validly Assented to the Arbitration Agreement ................................ 9

    II.  Any Challenge to Arbitrability of this Matter is For the Arbitrator ............... 12

    III.  Plaintiff's Claim Is Within the Scope of the Arbitration Agreement ............ 14

    IV.  Upon Compelling Arbitration, the Court Should Dismiss the First Amended Complaint ........... 16

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*,
    524 F.3d 1235 (11th Cir. 2008) ....................................................................................8

*Alford v. Dean Witter Reynolds, Inc.*,
    975 F.2d 1161 (5th Cir. 1992) .....................................................................................17

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)......................................................................................................7

*Am. Libraries Ass'n v. Pataki*,
    969 F. Supp. 160 (S.D.N.Y. 1997) ..............................................................................7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..................................................................................................7, 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)....................................................................................................14

*Athon v. Direct Merchants Bank*,
    2007 WL 1100477 (M.D. Ga. 2007)..........................................................................16

*Bazemore v. Jefferson Capital Sys., LLC*,
    827 F.3d 1325 (11th Cir. 2016) ..................................................................................14

*Bell v. Royal Seas Cruises, Inc.(Bell I)*,
    2020 WL 5742189 (S.D. Fla. May 13, 2020) ...................................................... *passim*

*Bell v. Royal Seas Cruises, Inc.(Bell II)*,
    2020 WL 5639947 (S.D. Fla. Sept. 21, 2020) ........................................................ 8-11

*Caley v. Gulfstream Aerospace Corp.*,
    333 F. Supp. 2d 1367 (N.D. Ga. 2004) .................................................................16, 17

*Cayanan v. Citi Holdings*,
    928 F. Supp. 2d 1182 (S.D. Cal. 2013).......................................................................16

*Cruz v. Cingular Wireless, LLC*,
    648 F.3d 1205 (11th Cir. 2011) ............................................................................... 7-8

*Cyganiewicz v. Sallie Mae, Inc.*,
    2013 WL 5797615 (D. Mass. Oct. 24, 2013)..............................................................16

*Dasher v. RBC Bank (USA)*,
    745 F.3d 1111 (11th Cir. 2014) ............................................................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)...................................................................................................... 7-8

*Feld v. Postmates, Inc.*,
    442 F. Supp. 3d 825 (S.D.N.Y. 2020)................................................................... 11-12

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................................................12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000).......................................................................................................8

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    139 S. Ct. 524 (2019)........................................................................................... 12-13

*Hendel v. Internet Escrow Servs., Inc.*,
    2021 WL 357884 (Fla. 3d Dist. Ct. App. Feb. 3, 2021) ............................................11

*Hodgson v NCL (Bah.), Ltd.*,
    151 F. Supp. 3d 1315 (S.D. Fla. 2015) .....................................................................16

*Hovanec v. Miller*,
    2018 WL 1221486 (W.D. Tex. Mar. 7, 2018) ..........................................................16

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002).......................................................................................................8

*Int'l Bhd. of Elec. Workers Sys. Council U-4 v. Fla. Power & Light Co.*,
    627 F. App'x 898 (11th Cir. 2015).............................................................................14

*Jones v. Waffle House, Inc.*,
    866 F.3d 1257 (11th Cir. 2017) .................................................................................13

*Kipu Sys., LLC v. ZenCharts, LLC*,
    2019 WL 7371879 (S.D. Fla. Oct. 16, 2019).............................................................11

*Klay v. All Defendants*,
    389 F.3d 1191 (11th Cir. 2004) ...................................................................................8

*Kivisto v. Nat'l Football League Players Assoc.*,
    2011 WL 335420 (S.D. Fla. Jan. 31, 2011) ..............................................................16

*MetroPCS Commc'ns, Inc. v. Porter*,
    273 So. 3d 1025 (Fla. 3d Dist. Ct. App. 2018) ....................................................10, 11

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)........................................................................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)................................................................................................................8, 14

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ............................................................................................10

*Nicholas v. Wayfair Inc.*,
    410 F. Supp. 3d 448 (E.D.N.Y. 2019) ................................................................................12

*Olsher Metals Corp. v. Olsher*,
    2003 WL 25600635 (S.D. Fla. Mar. 26, 2003).............................................................. 16-17

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003)................................................................................................................8

*Perera v. H & R Block Eastern Enters., Inc.*,
    914 F. Supp. 2d 1284 (S.D. Fla. 2012) ................................................................................16

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)................................................................................................................7

*Raw Life Organics LLC v. SBL, LLC*,
    2021 WL 217765 (S.D. Fla. Jan. 6, 2021) ..........................................................................11

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)................................................................................................................12

*Selby v. Deutsche Bank Tr. Co. Americas*,
    2013 WL 1315841 (S.D. Cal. Mar. 28, 2018) .....................................................................16

*Shea v. BBVA Compass Bancshares, Inc.*,
    2013 WL 869526 (S.D. Fla. Mar. 7, 2013)............................................................................7

*Sherman v. RMH, LLC*,
    2014 WL 30318 (S.D. Cal. Jan. 2, 2014) ............................................................................16

*Temple v. Best Rate Holdings LLC*,
    360 F. Supp. 3d 1289 (M.D. Fla. 2018)................................................................................7

*Tuck v. DirecTV*,
    2016 WL 6698938 (S.D. Cal. Nov. 15, 2016) .....................................................................16

*Williams v. Kelly Servs. Glob., LLC*,
    2020 WL 6882609 (M.D. Fla. Oct. 19, 2020) .....................................................................16

<u>Statutes</u>

9 U.S.C. § 1.........................................................................................................................................7

9 U.S.C. § 2.........................................................................................................................................7

9 U.S.C. § 4.........................................................................................................................................7

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Fandango Media, LLC ("Fandango") is a Virginia limited liability company headquartered in California that offers a website and mobile applications providing movie information and ticket purchasing services. Plaintiff Jason Goldstein ("Plaintiff") repeatedly used Fandango's website to purchase movie tickets. Each time he did so, he assented to a valid and binding agreement to individual arbitration of any dispute that might arise between the parties. But instead of pursuing individual arbitration as he had agreed to do, Plaintiff filed this class action lawsuit. As a result, this Court lacks jurisdiction to do anything other than confirm the existence of the parties' agreement and compel Plaintiff to litigate his claims in individual arbitration.

The facts here are routine: Plaintiff on at least two separate occasions agreed to Fandango's Terms and Policies ("Terms") when he navigated to the final page in the process of purchasing a movie ticket. To complete each transaction, Plaintiff clicked the "Complete My Purchase" button that was immediately above the following statement: "By clicking the Complete My Purchase button, you agree to the Privacy Policy and Terms and Policies and will be charged for this order" (with both "Privacy Policy" and "Terms and Policies" in blue text that plainly indicated that each was a hyperlink). Those Terms explain—in boldface text immediately after a brief introduction and a list of hyperlinks to eight other pages of specific policies—that users agree to resolve all disputes exclusively through individual arbitration:

**NOTICE OF ARBITRATION PROVISIONS:**

**All the above Terms and Policies and your use of the Services are subject to binding individual arbitration of any disputes which may arise. Please read the arbitration provisions carefully and do not use the Services if you are unwilling to arbitrate any disputes you may have with us as provided below.**

Declaration of Alice Song in Support of Fandango's Renewed Motion to Compel Arbitration ("Song Decl.") ¶ 8 & Ex. B (reproducing the Terms as of the date Plaintiff agreed to them).

The full text of the arbitration agreement appears immediately below that notice, under the boldface and capitalized heading "**BINDING ARBITRATION OF ALL DISPUTES**."

There is nothing out of the ordinary about Fandango's process for securing its customers' assent to an individual arbitration agreement. Numerous courts, including this one, have found that materially identical facts established reasonable notice of and assent to similar terms, and on that basis have granted motions to compel arbitration. The Court should do so again here.

*First*, Plaintiff assented to and is bound by Fandango's Terms. Fandango's streamlined online order interface, like so many others, conspicuously disclosed the Terms, made them accessible through a direct hyperlink, and asked Plaintiff to manifest his explicit assent to those terms by clicking the "Complete My Purchase" button to order a movie ticket. The Terms to which Plaintiff agreed included arbitration and class action waiver provisions.

*Second*, the Terms to which Plaintiff assented clearly and prominently notified Plaintiff that his "use of [Fandango's] Services is subject to binding individual arbitration of any disputes which may arise" and explicitly warned Plaintiff that he should "not use [Fandango's] Services" if he was "unwilling to arbitrate any disputes" that might arise between the parties.

*Third*, Plaintiff explicitly agreed to delegate to "the Arbitrator, and not any … court … exclusive authority" to interpret and enforce the agreement—including any questions about the arbitration agreement's "validity, interpretation, applicability, enforceability or formation of these Terms and/or these arbitration provisions hereof, including but not limited to any claim that all or any part of these Terms is void or voidable[.]" As a result, this court must defer to the arbitrator any consideration of whether the First Amended Complaint's sole claim is within the arbitration agreement's scope.

*Fourth*, if the Court proceeds past the delegation issue, it is clear that Plaintiff's sole claim unquestionably falls within the scope of the arbitration agreement, which encompasses "any dispute or disagreement with [Fandango] regarding or relating to (i) your use of or interaction with the Services, (ii) any purchases or other transactions or relationships with

2

Fandango, or (iii) any data or information you may provide to Fandango or that Fandango may gather in connection with such use, interaction or transaction[.]"

Because Plaintiff agreed to arbitrate his dispute—including threshold issues of arbitrability and enforceability—the Court should now direct him to proceed in arbitration and dismiss the First Amended Complaint.[1]

<b>FACTUAL BACKGROUND</b>

## I.      <u>Fandango's Guest Checkout Process</u>

Fandango operates an online platform that allows users to look up movie information and purchase tickets.  Declaration of Marc Pallister in Support of Fandango's Renewed Motion to Compel Arbitration ("Pallister Decl.") ¶ 2. Fandango's platform is accessible through its website, https://www.Fandango.com, and through certain mobile apps. *Id*. ¶ 3. A user can, but need not, register an account with Fandango to take advantage of its services. *Id*. ¶ 4. Regardless of whether a user purchases a movie ticket on the Fandango website using a registered account or as a guest without registering for a Fandango account, he or she must nevertheless agree to Fandango's Terms. *See* Song Decl. ¶ 7.

In this case, Plaintiff made at least two guest purchases: at 2:21 p.m. on February 20, 2020 (when he purchased a ticket for a movie screening later that evening in Delray Beach, Florida), and at 2:38 p.m. on March 7, 2020 (when he purchased a ticket for a movie screening later that evening in Boca Raton, Florida). Pallister Decl. ¶ 6; *see* First Amended Complaint ("FAC") ¶¶ 23-24 (alleging that "[o]ver the past year and a half, Plaintiff visited [Fandango's]

---

[1] Other than the legal argument that Plaintiff's agreement to arbitrate his claims is not valid because the alleged interception occurred before he agreed to Fandango's terms of service, [ECF 24, ¶ 51], the First Amended Complaint adds no factual allegations relevant to the question of whether his claim must be arbitrated. It merely adds allegations in support of Plaintiff's claim under the Florida Security of Communications Act.  Accordingly, this Renewed Motion to Compel Arbitration is substantively identical to Fandango's initial motion to compel arbitration. [ECF No. 17].

3

website approximately 3-6 times," "most recently … on or about February 2020").[2] On each of those two occasions, Plaintiff visited Fandango's website,[3] navigated through several screens to select the ticket he wished to purchase, and then specified that he wished to purchase the ticket as a guest rather than using a FandangoVIP account. *See* Pallister Decl. ¶¶ 7-8. After selecting the guest option, Plaintiff then entered his email address on the next screen. *Id.* Once he did so, Plaintiff encountered the checkout screen, which required Plaintiff to enter his preferred form of payment (and provided the option of entering discount or reward program information as well) and summarized for Plaintiff's reviewing the details of the pending transaction. *Id.* At that point, Plaintiff could only complete the purchase by scrolling to the bottom of the screen and clicking on an orange button with white text reading, "COMPLETE MY PURCHASE." *Id.*; Song Decl. ¶¶ 5-6 & Ex. A. Immediately below that button the following text appeared: "By clicking the Complete My Purchase button, you agree to the Privacy Policy and Terms and Policies and will



be charged for this order" (with both "Privacy Policy" and Terms and Policies" in blue text that plainly indicated that each was a hyperlink).

*Id.* Ex. A.

---

[2] Because Plaintiff bought a single ticket on each occasion (unlike most Fandango users who buy multiple tickets) and used his own email address to do so, there can be no dispute that it was Plaintiff who agreed to the Terms rather than some other person buying a ticket for him.

[3] Fandango users can also register for a FandangoVIP account. Because the record makes clear that Plaintiff made his purchases as a guest on the Fandango website rather than on a mobile app or as a FandangoVIP member, the discussion below describes the process by which Plaintiff agreed to the Terms exclusively by reference to the configuration of the website for guest purchases.

Clicking the plainly marked "Terms and Policies" hyperlink on the checkout screen would have taken Plaintiff immediately to the Terms page.[4] Near the top of that page, the Terms provided users with the following notice:

> **NOTICE OF ARBITRATION PROVISIONS:**
>
> **All the above Terms and Policies and your use of the Services are subject to binding individual arbitration of any disputes which may arise. Please read the arbitration provisions carefully and do not use the Services if you are unwilling to arbitrate any disputes you may have with us as provided below.**

*Id.* ¶ 8 & Ex. B. Immediately below that notice, Plaintiff would have seen the full text of the arbitration provisions to which that notice referred, as summarized below.

## II.     The Arbitration Provision and Class Action Waiver

Fandango's Terms prominently disclose to users that they are assenting to mandatory individual arbitration. Song Decl. Ex. B. Immediately after the notice that the Terms include an arbitration agreement—itself near the very top of the Terms page—the arbitration provision begins with the boldface, capitalized heading, "**BINDING ARBITRATION OF ALL DISPUTES.**" *Id.*[5] The Terms then provide the following summary—again in boldface text—that guest purchasers like Plaintiff agree to resolve all disputes with Fandango exclusively through individual arbitration:

> **We believe that arbitration is a faster, more convenient and less expensive way to resolve any disputes or disagreements that you may have with us. Therefore, pursuant to these Terms, if you have any dispute or disagreement with us regarding or relating to (i) your use of or interaction with the Services, (ii) any purchases or other transactions or relationships with Fandango, or (iii) any data or information you may provide to Fandango or that Fandango may gather in connection with such use, interaction or transaction (collectively, "Fandango Transactions or Relationships"), you will not have the right to pursue a claim in court, or have a jury decide the claim and you will not have the right to bring or participate in any class action or similar proceeding in**

---

[4] The Terms were and are also accessible via hyperlink from most pages on Fandango's website. *Id.* ¶ 11.

[5] The full text of the arbitration agreement also appears on a separate "Terms of Use" page to which the "Terms and Policies" page includes a clearly labeled hyperlink.

**court or in arbitration. By using or interacting with the Services, or engaging in any other Fandango Transactions or Relationships with us, you agree to binding arbitration as provided below.**

*Id.*[6]

The body of the arbitration section then fully sets forth the parties' agreement to arbitrate disputes, class action waiver, and procedures for conducting arbitrations. The agreement begins by noting that Fandango "will make every reasonable effort to informally resolve any complaints, disputes, or disagreements that you may have with us." *Id.*[7] If such efforts fail, however, the user agrees that "any complaint, dispute, or disagreement you may have against Fandango … arising out of, relating to, or connected in any way with our **Terms of Use**, our **Privacy Policy**, our Terms and Policies, or any Fandango Transactions or Relationships shall be resolved exclusively by final and binding arbitration." *Id.* (highlighting indicating hyperlinks in original). The agreement then specifies the organization to administer and apply its rules to the arbitration (JAMS, or AAA if JAMS or its successor no longer exists). Following that introductory section, the agreement sets out eleven specific provisions, each as a separate bullet point. Those include, as relevant here:

- An agreement that "the Arbitrator, and not any … court … shall have the exclusive authority to resolve any dispute arising under or relating to the validity, interpretation, applicability, enforceability or formation of these Terms and/or these arbitration provisions hereof, including but not limited to any claim that all or any part of these Terms is void or voidable;"

- A choice of law provision (requiring the Arbitrator to "apply internal laws of the State of New York (or if a claim involving a gift card then instead Virginia) consistent with the Federal Arbitration Act and applicable statutes of limitations,

---

[6] The paragraph's concluding sentence extending the coverage of the arbitration agreement to Fandango's owners is omitted as irrelevant to this case.

[7] The paragraphs in the arbitration agreement as it appears in the Terms are not individually numbered. In the copy of the agreement incorporated into the Terms of Use to which the Terms page includes a hyperlink, the arbitration agreement is designated as Section 20, and the agreement's individual provisions (set off with bullet points in the Terms) are labeled as subsections "a" through "k."

or, to the extent (if any) that federal law prevails, shall apply the law of the United States, irrespective of any conflict of law principles"); and

- A prohibition of class actions ("the Arbitration can resolve only your and/or Fandango's individual claims, and the Arbitrator shall have no authority to entertain or arbitrate any claims on a class or representative basis, or to consolidate or join the claims of other persons or parties who may be similarly situated").

*Id.*[8]

Each time Plaintiff bought a movie ticket on Fandango's website in 2020, before he could complete the transaction, Plaintiff had to review his purchase, provide payment information, and then click on a button immediately above text informing him that by taking that action he would agree to Fandango's Terms, including the arbitration requirement.

## ARGUMENT

Plaintiff assented to and is bound by a valid agreement to arbitrate disputes, which delegates all arbitrability questions to the arbitrator. Under the Federal Arbitration Act ("FAA"), upon a motion by either party to an arbitration agreement, courts must compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4.[9] The Act embodies the "liberal federal policy favoring arbitration" as another way to resolve disputes and the "fundamental

---

[8] The agreement's final bullet point allows the user entering the agreement to elect to file individual claims in her local small claims court if they are within the court's jurisdictional limits and the court lacks authority to entertain the claims on a class, representative, or aggregate basis. *Id.* The exception is plainly inapplicable to Plaintiff's claim here.

[9] The FAA broadly applies to any transaction that directly or indirectly affects interstate commerce. *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401-02 (1967); *see also* 9 U.S.C. §§ 1-2. Fandango is Virginia limited liability company, headquartered in California, and provides an online platform to connect users in all fifty states with its products and services. *See* ECF 1, ¶ 15; ECF 1-3, ¶¶ 4-22; Pallister Decl. ¶ 2. According to the First Amended Complaint, Plaintiff is a citizen and resident of Florida. FAC ¶ 17. Courts hold that the FAA's interstate commerce requirement is satisfied in such circumstances. *See, e.g.*, *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1298 (M.D. Fla. 2018) (applying FAA to agreement between users and online platform and granting motion to compel arbitration); *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526, at *3 (S.D. Fla. Mar. 7, 2013) (same); *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 170 (S.D.N.Y. 1997) (noting the Internet "is wholly insensitive to geographic distinctions").

7

principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and quotation marks omitted). The FAA "requires courts to 'rigorously enforce agreements to arbitrate' according to their terms." *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *accord Concepcion*, 563 U.S. at 339.

Courts faced with a motion to compel arbitration must engage in a two-step inquiry. The first step is determining whether the parties agreed to arbitrate the dispute in question. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). The second step is determining whether "legal constraints external to the parties' agreement foreclosed arbitration." *Id.*; *see also PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002)). The FAA "leaves no place for the exercise of discretion by a district court" in that regard. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. Courts must resolve any "doubts concerning the scope of arbitrable issues … in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (holding party seeking to avoid arbitration has the burden of showing the arbitration provision is unenforceable); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008) ("[W]hen a dispute is arbitrable, entry of a § 3 stay is mandatory."); *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5742189, at *2 (S.D. Fla. May 13, 2020) ("*Bell I*"), *report and recommendation adopted*, 2020 WL 5639947, at *4 (S.D. Fla. Sept. 21, 2020) (Ruiz, J.) ("*Bell II*").

I.    **Plaintiff Validly Assented to the Arbitration Agreement**

Under Florida law, a party seeking to enforce the terms of an online contract must show both reasonable notice of the terms and a reasonable manifestation of assent to those terms.  *See*, *e.g.*, *Bell I*, 2020 WL 5742189, at *5; *Bell II*, 2020 WL 5639947, at *4 (citing cases).[10]

Fandango's records conclusively establish that Plaintiff validly assented to the terms as a matter of Florida law. Those records show that on each of two separate days in February and March 2020, Plaintiff bought a movie ticket using Fandango's website. On each occasion, Plaintiff clicked the "Complete My Purchase" button that appeared above the notice reading, "By clicking the Complete My Purchase button, you agree to the **Privacy Policy** and **Terms and Policies**, and will be charged for this order." *See* Song Decl. ¶¶ 5-6; Pallister Decl. ¶¶ 6-8.

That is precisely the kind of notice and manifestation of assent that both the magistrate judge and this Court found sufficient in *Bell I* and *Bell II*.[11] In both that case and this one, a visitor to the pertinent website could only proceed with a desired action by clicking a button that appeared immediately adjacent to a text notice that clearly linked doing so with explicit assent to an agreement that was not itself set forth on the screen but was available by a plainly marked hyperlink. In light of those parallels, extended quotations from both the magistrate judge's analysis under Florida law and this court's adoption of that reasoning are instructive.

---

[10] As this Court held in *Bell II*, state law governs the issue of contract formation. In the absence of any conflict between the pertinent law of the forum state of Florida and that of New York— which the parties agreed would govern any disputes between them, *see* Song Decl., Ex. C (Terms of Use) ¶ 19)—the Court need not decide which state's law applies. *See Bell II*, 2020 WL 5639947, at *4.

[11] In *Bell II*, this Court adopted the magistrate judge's conclusion that clicking on the corresponding button on the website at issue in that case sufficed to show that the person who did so assented to an arbitration agreement. There nevertheless remained a triable issue of fact as to whether plaintiff Bell was the person who had assented, as she denied ever having visited the website before the litigation began. *See Bell I*, 2020 WL 5742189, at *8; *Bell II*, 2020 WL 5639947, at *1. No such impediment to compelling arbitration exists here, as Plaintiff admits that he repeatedly visited the Fandango website. *See* FAC ¶¶ 23-24. In addition, the record is clear that during two of those visits, Plaintiff used the guest checkout process to buy a movie ticket. Pallister Decl. ¶ 6.

9

In his Report and Recommendation, the magistrate judge meticulously set forth the ways in which the website at issue in that case provided notice of, and solicited valid assent to, an arbitration agreement:

> [T]he Website in this case has features that put a reasonable user on notice that he or she is assenting to the Terms and Conditions.
>
> First, in terms of placement, the Website does not simply "tuck away" the Terms and Conditions in an obscure corner of the Website where a user is unlikely to encounter them. Rather, the statement regarding the Terms and Conditions is located directly above the Continue button that the user must click to proceed with using the Website. Thus, it is highly likely that the user would see the statement regarding the Terms and Conditions….
>
> Second, rather than simply having a link that informs the user that Terms and Conditions merely exist, the short sentence regarding the applicability of terms and conditions specifically starts off by stating "I understand and agree." Thus, as *Nguyen* suggests, there is an explicit textual notice that continued use will act as a manifestation of an intent to be bound. A reasonable user confronting a sentence "I understand and agree to email marketing, the Terms & Conditions which includes mandatory arbitration, and Privacy Policy" would understand that he or she is assenting to the linked terms and, significantly, that those terms "include[ ] mandatory arbitration."
>
> Finally, although the user is not required to check an acknowledgement box to accept the Terms and Conditions, he or she must take the affirmative act of clicking the Continue button directly below the relevant statement.

*Bell I*, 2020 WL 5742189, at *6-7 (citing *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, (Fla. 3d Dist. Ct. App. 2018)); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

After summarizing with approval the magistrate judge's analysis and reliance on the cited precedent, this Court reached the same result:

> The Court therefore concludes that the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice of the Terms and Conditions, and clicking "Continue" directly below the relevant statement is sufficient to constitute assent to the Terms and Conditions. Consequently, there is no genuine dispute of material fact as to whether the person who clicked "Continue" on the Website assented to the Terms and Conditions, which included mandatory arbitration.

*Bell II*, 2020 WL 5639947, at *6.

The Report and Recommendation included an image of the relevant screen at issue in the case, as reprinted below:



*Bell I*, 2020 WL 5742189, at *1. As that image demonstrates, there is no meaningful difference between the circumstances of this case and those in *Bell II*.[12]

Numerous other courts have likewise found that webpage layouts similar to Fandango's (alternately described as a form of "browsewrap" or "sign-in wrap" agreement) provided reasonably conspicuous notice of, and solicited valid assent to, the contractual terms of service. *See*, *e.g.*, *Raw Life Organics LLC v. SBL, LLC*, 2021 WL 217765, at *4 (S.D. Fla. Jan. 6, 2021), *report and recommendation adopted*, 2021 WL 217076 (S.D. Fla. Jan. 21, 2021); *Kipu Sys., LLC v. ZenCharts, LLC*, 2019 WL 7371879, at *4-5 (S.D. Fla. Oct. 16, 2019), *appeal filed*, No. 20-14802 (11th Cir. Dec, 28, 2020); *Hendel v. Internet Escrow Servs., Inc.*, 2021 WL 357884, at *3

---

[12] Notably, although the text of the notice above the "Continue" button explicitly mentioned that the hyperlinked Terms & Conditions included mandatory arbitration, neither the magistrate judge nor this Court explicitly relied on that aspect of the notice in finding valid assent under Florida law. Instead, both opinions relied on the layout of the screen, the presence of the hyperlink, and the fact that the text made clear that clicking the button would signal assent to the linked terms. *See Bell I*, 2020 WL 5742189 at *6-7 (distinguishing *MetroPCS*, in which the text above the button did not explain that clicking indicated agreement to the terms); *Bell II*, 2020 WL 5639947, at *5-6 (same). Similarly, the court's reasoning makes immaterial the fact that the button in *Bell* was just below the text indicating assent to the arbitration provision while the one in this case was right above it. In both cases, the fact that the button was adjacent to the text rather than tucked away in an obscure corner of the website made it likely the user would see the statement before clicking the button.

(Fla. 3d Dist. Ct. App. Feb. 3, 2021); *MetroPCS Commc'ns, Inc.*, 273 So. 3d at 1028-29; *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 827, 830-33 (S.D.N.Y. 2020); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 453-54 (E.D.N.Y. 2019); *Fteja v. Facebook*, Inc.*,* 841 F. Supp. 2d 829, 837-40 (S.D.N.Y. 2012).

Regardless of whether Plaintiff took the time to read the Terms at issue here, Fandango provided Plaintiff reasonable and conspicuous notice of those terms as a matter of Florida law. And on at least two separate occasions, when Plaintiff clicked the "Complete My Purchase" button immediately above that notice, he gave valid assent to those Terms, including the arbitration agreement, as a matter of Florida law. This Court should therefore find that Plaintiff is bound by the Terms and the arbitration agreement therein.

## II.    Any Challenge to Arbitrability of this Matter is For the Arbitrator

The arbitration agreement to which Plaintiff assented includes a delegation clause stating that any objections Plaintiff may have to the arbitrability of his claims or the validity or enforceability of the arbitration provision (or Terms as a whole) must be decided exclusively by "the Arbitrator, and not any … court[.]" Song Decl., Ex. B.  Thus, once the Court determines that the Plaintiff has entered into an arbitration agreement that includes such a delegation clause, it should simply send the case to arbitration without reaching the merits of any objection.[13]

Before reaching a challenge to arbitrability, a court must examine the contract to determine whether the parties have agreed to commit the issue to the arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Bell I*, 2020 WL 5742189, at *5. "When the parties' contract delegates the arbitrability

---

[13] In any event, as explained in the next section, even if the Court were to consider the matter, it is clear that Plaintiff's claim is subject to arbitration.

question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529-31 (2019); *Bell I*, 2020 WL 5742189, at *5 (quoting same).

Parties may delegate these threshold questions to an arbitrator as long as their arbitration agreement does so in "clear and unmistakable" language. *Henry Schein*, 139 S. Ct. at 530 (citation omitted); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017); *Bell I*, 2020 WL 5742189, at *2. That is the case here. The parties' delegation provision reveals a clear and unmistakable intention to have the arbitrator decide whether the dispute is arbitrable, as well as any other threshold challenges to the validity or enforceability of the arbitration agreement:

> [T]he Arbitrator, and not any federal, state or local court or agency, shall have the ***exclusive authority*** to resolve ***any dispute arising under or relating to the validity, interpretation, applicability, enforceability or formation of*** these Terms and/or ***these arbitration provisions hereof***, including but not limited to any claim that all or any part of these Terms is void or voidable[.]

Song Decl., Ex. B (emphasis added).

Courts repeatedly have found such language to be clear and unmistakable. In *Jones*, for example, the Eleventh Circuit held that a virtually identical delegation provision "clearly and unmistakably evince[d] the parties' intent to arbitrate all gateway issues. The provision requires arbitration of '*any* dispute' relating to gateway issues, and as we have said, any disputes means all disputes, because 'any' mean all." 866 F.3d at 1267 (cleaned up).[14] Likewise, in *Bell I*, the

---

[14] The text of the delegation provision in *Jones* was, if anything, slightly *less* clear and unmistakable than the one at issue here. Fandango's delegation provision includes all of the language of the provision in *Jones*, as well as the bolded and italicized text set forth in the following side-by-side comparison:

| Delegation provision in *Jones* | Fandango's delegation provision |
|---|---|
| The Arbitrator, and not any federal, state, or local court or agency, shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable. | [T]he Arbitrator, and not any federal, state or local court or agency, shall have **the exclusive** authority to resolve any dispute **arising under or** relating to the **validity,** interpretation, applicability, enforceability or formation of these Terms **and/or these arbitration provisions hereof,** including but not limited |

13

magistrate judge found that the parties manifested the "requisite intent" to arbitrate gateway issues where "the relevant provision delegate[d] 'exclusive authority [to the arbitrator] to resolve *any dispute* including any claim that all or any part of the Terms & Conditions, including this provision, are unenforceable.'" *Bell I*, 2020 WL 5742189, at *3 (brackets and emphasis in original).

Thus, even if Plaintiff's position is that this matter is not subject to arbitration for some reason, the Court should nevertheless compel arbitration so that the arbitrator may decide that question.

**III.   <u>Plaintiff's Claim Is Within the Scope of the Arbitration Agreement</u>**

Although the Court need not reach the issue, Plaintiff's claims unquestionably fall within the scope of the parties' arbitration agreement, mandating that this dispute be resolved in arbitration.

The FAA requires courts to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Int'l Bhd. of Elec. Workers Sys. Council U-4 v. Fla. Power & Light Co.*, 627 F. App'x 898, 901 (11th Cir. 2015) ("The presumption of arbitrability is particularly applicable where an arbitration clause is broadly worded.") (quotation marks and citation omitted). "The FAA 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24–25); *accord Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (same; quoting *Dasher v. RBC Bank (USA)*, 745 F.3d at 1115-16; *Bell I*, 2020 WL 5742189, at * 2 (same; quoting *Bazemore*).

| | to any claim that all or any part of these Terms is void or voidable[.] |
|---|---|

Here, the parties agreed to broad arbitration language, covering "any complaint, dispute, or disagreement [Plaintiff] may have against Fandango … arising out of, relating to, or connected in any way with … our Privacy Policy, … or any Fandango Transactions or Relationships." Song Decl., Ex. B.[15] Even more specifically, the arbitration agreement identifies (without limitation) three particular types of disputes that must be submitted to individual arbitration:

> [I]f you have any dispute or disagreement with us regarding or relating to (i) *your use of or interaction with the Services*, (ii) *any purchases* or other transactions or relationships with Fandango, or (iii) *any data or information you may provide to Fandango or that Fandango may gather in connection with such use, interaction or transaction* (collectively, "Fandango Transactions or Relationships"), you will not have the right to pursue a claim in court, or have a jury decide the claim and you will not have the right to bring or participate in any class action or similar proceeding in court or in arbitration.

*Id.* (emphasis added).[16]

The sole claim in Plaintiff's First Amended Complaint falls within all three of those categories. Plaintiff complains that Fandango intercepted his electronic communications to Fandango during his visits to Fandango's website. *See* FAC ¶¶ 77-80.[17] Plaintiff therefore cannot reasonably dispute that his claim relates to (i) his use of or interaction with Fandango's website services; (ii) his purchases of tickets from Fandango during two of his visits; and (iii) data or information that Plaintiff provided to Fandango or that Fandango gathered in connection with Plaintiff's use of, interactions with, and transactions on the Fandango website. In these

---

[15] The reference to the Privacy Policy is particularly relevant. As will be discussed in greater detail in a motion to dismiss should the Court reach the merits of this case, the Privacy Policy to which Plaintiff agreed when he assented to Fandango's Terms includes a provision that explicitly forecloses the sole claim in the First Amended Complaint. *See* Song Decl., Ex. D, Section 1 (advising users that Fandango "collect[s] automatically" certain information including "browsing activity, scrolling and keystroke activity, theaters searched, locations searched, movies searched, shows viewed, movie trailers or other advertisements viewed, forms or fields you complete or partially complete, search terms, whether you open an email, content you view and duration, quality of the service and interaction with the content, logs, and other similar information").

[16] The Terms define "Services" to include, among other things, the services provided through the Fandango website. *Id.*

[17] The fact that the substance of such a claim is inherently nonsensical is not at issue in this motion. Fandango reserves the right to separately seek dismissal of the First Amended Complaint on the merits in the appropriate forum.

circumstances, it is hard to imagine a case that would be more clearly subject to arbitration—or one less amenable to continued prosecution in this Court consistent with the requirements of Federal Rule of Civil Procedure 11(b).

Accordingly, the sole claim in Plaintiff's First Amended Complaint is subject to mandatory arbitration. *See Williams v. Kelly Servs. Glob., LLC*, 2020 WL 6882609, at *1 (M.D. Fla. Oct. 19, 2020), *appeal dismissed*, 2021 WL 688418 (11th Cir. Feb. 2, 2021) (compelling arbitration of all claims including a claim under "Florida's wiretap law"); *Hovanec v. Miller*, 2018 WL 1221486, at *13 (W.D. Tex. Mar. 7, 2018) (staying claims under the Federal Wiretap Act pursuant to the FAA pending arbitration); *Selby v. Deutsche Bank Tr. Co. Americas*, 2013 WL 1315841, at *8 (S.D. Cal. Mar. 28, 2018) (compelling arbitration of TCPA claims because they related to the parties' agreement); *see also Tuck v. DirecTV*, 2016 WL 6698938, at *3 (S.D. Cal. Nov. 15, 2016) (same); *Sherman v. RMH, LLC*, 2014 WL 30318, at *9 (S.D. Cal. Jan. 2, 2014) (same); *Cayanan v. Citi Holdings*, 928 F. Supp. 2d 1182, 1208-09 (S.D. Cal. 2013) (same); *cf. Cyganiewicz v. Sallie Mae, Inc.*, 2013 WL 5797615, at *4 (D. Mass. Oct. 24, 2013) (compelling arbitration of TCPA claims where arbitration provision covered narrower disputes relating to debt collection).

## IV.    <u>Upon Compelling Arbitration, the Court Should Dismiss the First Amended Complaint</u>

If the Court agrees that Plaintiff must arbitrate the sole claim in his First Amended Complaint and therefore grants the motion to compel, no live dispute will remain to be resolved in this forum and the Court should therefore dismiss the case. "Within this District, a number of courts have dismissed the case where all claims were subject to arbitration." *Hodgson v NCL (Bah.), Ltd.*, 151 F. Supp. 3d 1315, 1316-17 (S.D. Fla. 2015) (compelling arbitration and dismissing complaint); *see also Perera v. H & R Block Eastern Enters., Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012); *Kivisto v. Nat'l Football League Players Assoc.*, 2011 WL 335420 (S.D. Fla. Jan. 31, 2011), *aff'd*, 435 F. App'x 811 (11th Cir. 2011); *Olsher Metals Corp. v. Olsher*, 2003 WL 25600635 (S.D. Fla. Mar. 26, 2003), *aff'd*, 2004 WL 5394012 (11th Cir. Jan.

26, 2004); *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367 (N.D. Ga. 2004) (compelling arbitration and dismissing the case), *aff'd*, 428 F.3d 1359 (11th Cir. 2005); *Athon v. Direct Merchants Bank*,  2007 WL 1100477 (M.D. Ga. 2007), *aff'd*, 251 F. App'x 602 (11th Cir. 2007). "A case in which arbitration has been compelled may be dismissed in the proper circumstances, such as when *all* the issues raised in ... court must be submitted to arbitration." *Olsher*, 2003 WL 25600635, at *9; *accord Caley*, 333 F. Supp. 2d at 1379 (dismissing without prejudice all of plaintiff's claims because "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (emphasis in original) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)), *aff'd*, 428 F.3d at 1379 ("[T]he district court properly granted defendants' motions to dismiss and compel arbitration.").

## CONCLUSION

For the reasons explained above, Fandango respectfully requests that the Court order Plaintiff to arbitrate his claims against Fandango on an individual basis pursuant to the parties' arbitration agreement and dismiss the First Amended Complaint without prejudice.

## CERTIFICATE OF GOOD FAITH
## CONFERRAL PURSUANT TO LOCAL RULE 7.1(a)(3)

Counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the instant motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: April 15, 2021                    Respectfully submitted,
                                         By: /s/ Nury Siekkinen
                                         _____
                                             Nury Siekkinen
                                             Florida Bar No. 1015937
                                             Primary email: nury@zwillgen.com
                                             **ZWILLGEN PLLC**
                                             1900 M Street NW, Suite 250
                                             Washington, DC 20036
                                             Telephone: (202) 296-3585
                                             Facsimile:  (202) 706-5298
                                             *Attorney for Defendant Fandango Media, LLC*

17

## CERTIFICATE OF SERVICE

I certify that on April 15, 2021, a true and accurate copy of the foregoing has been electronically filed with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

   /s/ Nury Siekkinen
Nury Siekkinen (Florida Bar No. 1015937)

## SERVICE LIST

Andrew J. Shamis
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
ashamis@shamisgentile.com

Scott Edelsberg
EDELSBERG LAW, PA
20900 NE 30th Avenue, Suite 417
Aventura, Florida 33180
scott@edelsberglaw.com

Manuel Hiraldo
HIRALDO P.A.
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, Florida 33301
MHiraldo@Hiraldolaw.com