**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 9:21-cv-80466-RAR

JASON GOLDSTEIN, *individually and*
*on behalf of all others similarly situated*,

    Plaintiff,

vs.

FANDANGO MEDIA, LLC,

    Defendant.

_____/

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF**
**RENEWED MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................2

I.      Plaintiff Validly Assented to the Arbitration Agreement ....................................................2

         A.      The Parties Agreed to Arbitration...........................................................................2

         B.      Plaintiff's Unconscionability Argument Is Both Wrong and Insufficient ...............5

II.     Plaintiff's Argument That His Claim Is Not Arbitrable Is Misdirected and Wrong.............7

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff provides no valid reason to avoid the binding arbitration to which he contractually committed himself when he bought tickets on Fandango's website. Plaintiff does not contest the most critical facts: that he twice used a checkout process reasonably designed to secure his valid assent to arbitrate all disputes with Fandango; that the arbitration agreement explicitly delegates to the arbitrator all questions of scope; that the Terms expressly commit to arbitration "any dispute or disagreement with [Fandango] regarding or relating to" three broad categories without any temporal limit; or that the claim here falls into each one of those categories. Plaintiff also ignores virtually all of Fandango's legal arguments as to why those facts require him to arbitrate his claim and warrant dismissal of this action without prejudice.

Instead of addressing the dispositive facts and law, Plaintiff resorts to misdirection and *non sequiturs*. Chief among these is the remarkable assertion that, well over a year after the fact, he somehow recalls that he scrolled exactly far enough down to click the "Complete My Purchase" button but not far enough to see the assent language millimeters below it. Based on that assertion, as well as the misguided assumption that the timing of his assent to arbitration somehow affects the arbitrability of a single claim based on conduct that allegedly occurred both before and after that assent, Plaintiff's effort to avoid arbitration makes four fundamental errors.

***First***, in response to evidence that Fandango's guest checkout process provided objectively conspicuous notice of the arbitration agreement, Plaintiff relies on a subjective assertion that he lacked actual knowledge of Fandango's Terms. Even if the Court assumes the truth of that claim – despite its implausibility as a matter of law – the relevant question is not what Plaintiff *actually* saw but whether Fandango's website put him on *constructive* notice of the arbitration agreement. The answer to the latter question is yes as a matter of law.

***Second***, Plaintiff's argument about procedural unconscionability is both wrong and incomplete: it rests on a procedural theory that courts routinely reject and it ignores the additional showing of substantive unconscionability that courts routinely require to invalidate an

1

agreement like the one in this case.

***Third***, Plaintiff's argument that he need not arbitrate a claim that accrued before a certain time manifestly requires an interpretation of the arbitration agreement's scope. But Plaintiff has not even attempted to refute that he agreed to delegate all such questions of interpretation to the arbitrator rather than this Court.

***Fourth***, Plaintiff's scope argument is in any event wrong on the merits: the arbitration agreement explicitly, permissibly, and reasonably requires Plaintiff to litigate "***any***" and "***all***" disputes with Fandango, regardless of when they accrued.

The Court should therefore grant the motion to compel and dismiss the First Amended Complaint ("FAC").

## ARGUMENT

**I.     Plaintiff Validly Assented to the Arbitration Agreement**

Plaintiff acknowledges that each time he bought a movie ticket on Fandango's website, he clicked a button immediately adjacent to a notice that doing so would signal his assent to the hyperlinked Terms. *See* ECF 29-1 ("Goldstein Decl.") ¶ 3; *see also* ECF 26-1 ("Song Decl.") ¶ 6 & Ex. A. He nevertheless argues that he did not enter into a binding arbitration agreement for two reasons: (1) he did not scroll down to view the notice, and (2) the agreement is procedurally unconscionable. *See* ECF 29 ("Response") at 8-11. Both arguments fail as a matter of law.

**A.     The Parties Agreed to Arbitration**

Plaintiff would have the Court believe that well over a year after his two purchases, he remembers them with sufficient precision to be able to report that on each occasion, he "did not scroll down to view" the assent language directly below the "Complete My Purchase" button. Goldstein Decl. ¶ 4. Plaintiff's remarkable claim does not suffice for two reasons: it is inapposite to the legal issue of constructive notice and it is implausible.

Plaintiff's argument that he did not see the assent language fails first because it addresses an inapposite legal question – actual notice – rather than the constructive notice theory on which

Fandango relies.[1] As this Court recognized in *Bell II*, the type of "browsewrap" agreement at issue here is enforced *either* "when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice of the terms and conditions[.]" *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5639947, at *5 (S.D. Fla. Sept. 21, 2020) (Ruiz, J.) ("*Bell II*") (citation and internal quotation omitted); *see also Arencibia v. AGA Serv. Co.*, 2021 WL 1318225, at *6 (S.D. Fla. Apr. 8, 2021) (noting that a browsewrap agreement is enforceable when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice) (quoting *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5742189, at *5 (S.D. Fla. May 13, 2020) ("*Bell I*")); *Raw Life Organics LLC v. SBL, LLC*, 2021 WL 217765, at *5 (S.D. Fla. Jan. 6, 2021) (same), *report and recommendation adopted*, 2021 WL 217076 (S.D. Fla. Jan. 21, 2021); *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. Dist. Ct. App. 2018) (same).

In *Bell II*, the Court made clear that a plaintiff's denial of actual knowledge of the defendant's terms could not preclude an order to compel arbitration where the website featured a hyperlink to the terms that was "sufficiently conspicuous to put a reasonably prudent user on inquiry notice of the terms of the contract." *Bell II*, 2020 WL 5639947, at *6. The constructive notice finding in *Bell II* also had nothing to do with the distinction on which Plaintiff relies – namely, the fact that the notice text was immediately above the button in that case and immediately below it here. The Court's observation that "it is nearly impossible that any user would not see [the notice] statement before hitting [the button indicating assent]," *id*., did not rely on the placement of the statement above the button rather than below it; instead, it relied on the fact that "this design is a far cry far from those wherein 'the hyperlink to the terms and conditions is buried at the bottom of the page[.]'" *Id*. (citation omitted); *see also Bell I*, 2020 WL

---

[1] Plaintiff misrepresents the record by asserting that Fandango "has not introduced *any* evidence … that Plaintiff had constructive knowledge" of the arbitration agreement. Response at 9 (emphasis in original). Given the declarations and exhibits Fandango submitted in support of its constructive knowledge argument, the statement is clearly false. *See* ECF 26 (Fandango's initial brief) at 9-12; Song Decl. ¶¶ 4-8 & Exs. A-B; ECF 26-6 ("Pallister Decl.") ¶¶ 5-8.

5742189, at *7 ("[T]he Website does not simply 'tuck away' the Terms and Conditions in an obscure corner of the Website where a user is unlikely to encounter them.").

Indeed, it is commonplace for courts to enforce browsewrap agreements (including both arbitration and forum selection agreements) where, as here, the notice text referring to the applicable terms appears immediately below the button indicating assent rather than immediately above it. *See*, *e.g.*, *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 332-34 (W.D. Pa. 2020); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 453-54 (E.D.N.Y. 2019); *Fteja v. Facebook Inc.*, 841 F. Supp. 2d 829, 838-40 (S.D.N.Y. 2012); *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683 (E.D. Va. 2020); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017).[2]

These decisions focus on a website's design and layout to assess constructive notice – not on any inquiry into what parts of a page a plaintiff scrolled to or what he did or did not actually see. The latter questions have no more to do with the inquiry notice standard than a question about whether a plaintiff shut his eyes to avoid seeing notice text. Indeed, allowing subjective questions like the one Plaintiff seeks to raise here to preclude a finding of **constructive** notice would impermissibly read out of the governing law the ability to rely on the reasonably conspicuous notice and would require a summary trial every time a plaintiff made a conclusory assertion that he did not see the relevant notice text on a webpage.

---

[2] The cases on which Plaintiff relies in this regard, *see* Response at 10-11, did not involve notice text immediately below the buttons indicating assent. In *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 23 (2d Cir. 2002), the relevant notice text was on a separate screen after the pertinent "Download" button and said nothing to alert a user that clicking the button would signal assent to the terms. In *Herman v. SeaWorld Parks & Entertainment, Inc.*, 2016 WL 7447555, at *2, *5 (M.D. Fla. Aug. 26, 2016), there was *no* notice text; the defendant instead relied on "a small-print hyperlink titled 'Terms and Conditions,' … located at the very bottom" of each webpage. The website designs in those cases are a far cry from those in which "courts have enforced browsewrap agreements where hyperlinks to terms are conspicuous." *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1303 (M.D. Fla. 2018). Notably, the Florida federal court in *Temple* explicitly contrasted the design features that precluded a finding of constructive notice in *Specht* and *Herman* with the sufficiently conspicuous browsewrap design in *Fteja*. *Id*. In *Fteja*, as in this case, the notice text appeared **below** the button.

Even if Plaintiff's subjective recollection were material (which it is not), its obvious implausibility renders it insufficient to preclude an order compelling arbitration. Because the Court applies a "summary judgment-like standard" to the question of whether Plaintiff agreed to arbitration, *see Bell II*, 2020 WL 5639947, at *6, Plaintiff has the burden in the circumstances here to "produc[e] evidence to substantiate" his denial that there was an agreement. *Id*. at *3. Plaintiff's self-serving, uncorroborated declaration does not suffice. Even if Plaintiff has the eidetic memory he describes – itself a wildly implausible claim – it is preposterous for him to assert that each time he bought a ticket, he just happened to manipulate his screen in exactly the right way to include the "Complete My Purchase" button but exclude the notice text millimeters below. The story is "so … implausible on its face that a reasonable factfinder would not credit it." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

This may be why Plaintiff carefully says only that he "did not **scroll down** to view" the notice text, Goldstein Decl. ¶ 4 (emphasis added), as opposed to reporting whether the notice text below the button appeared on his screen when the checkout page first loaded onto his computer, as would normally occur. Even if Plaintiff actually saw the notice text below the button during both transactions – indeed, even if he clicked on the hyperlink and read the arbitration agreement – his declaration would still be literally true, so long as he did not have to "scroll down" in order to see the notice text. As a result, even if one were to credit Plaintiff's purported recollection, he has **not** made the "unequivocal denial that there was an agreement" required to fend off a finding that he agreed to arbitration. *Bell II*, 2020 WL 5639947, at *3.

B.  **Plaintiff's Unconscionability Argument Is Both Wrong and Insufficient**

If the Court agrees that the parties agreed to arbitrate some class of claims, the second and last step in deciding whether to compel arbitration is to determine whether "legal constraints external to the parties' agreement foreclosed arbitration." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (citation omitted). Plaintiff makes a halfhearted attempt to conjure such a constraint by arguing that the arbitration agreement to which he assented is procedurally unconscionable. That argument fails for two basic reasons: the caselaw of this circuit explicitly

5

rejects Plaintiff's position on procedural unconscionability and it also imposes a separate requirement of substantive unconscionability that Plaintiff does not even try to satisfy.

The entirety of Plaintiff's explanation as to why the circumstances of this case establish procedural unconscionability is limited to just one sentence: "Fandango deceptively presented purported arbitration language to Plaintiff after it had violated Plaintiff's rights under the FSCA on numerous occasions, and Fandango presented the agreement on a take-it-or-leave-it basis, and provided Plaintiff with no meaningful choice." Response at 8-9.[3] Each component of that assertion is wrong. First, the proposition that the arbitration agreement was "deceptively presented" is at odds with the extensive case law discussed above finding that website designs similar to Fandango's provide reasonably conspicuous notice of their terms of use.

Second, Plaintiff's argument that it is unconscionable to apply an arbitration agreement to disputes that previously started to accrue illogically conflates procedure (the way the parties entered into the agreement) with substance (the scope of claims they agreed to arbitrate). For example, if Plaintiff's complaint was that he bought a ticket on Fandango's site for one screening but received a ticket for another, he could not evade arbitrating that claim by pointing to the alleged monitoring of his website usage (of which Plaintiff professes to have been ignorant at the time of his purchases) – the latter would have nothing to do with his claim. By its nature, the validity of a claim that an arbitration agreement is ***procedurally*** unconscionable cannot depend on the nature of the claim plaintiff wishes to litigate. It is therefore no surprise that courts have previously compelled plaintiffs to arbitrate wiretapping claims that arose before they entered into arbitration agreements. *See*, *e.g.*, *Freedman v. Comcast Corp.*, 988 A.2d 68 (Md. App. 2010);

---

[3] Plaintiff cites two cases that he suggests support his unconscionability argument. Response at 8. Neither does so. In one, the court both rejected the plaintiff's procedural unconscionability argument and noted that plaintiff would also need to demonstrate substantive unconscionability. *See Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 261 (Fla. Dist. Ct. App. 2004). And many courts have declined to follow the reasoning in the other, *Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. Dist. Ct. App. 1999), in part because its remedial limitation of an arbitration agreement on public policy grounds went "beyond the initial gateway determination of an arbitration agreement's enforceability" and is more appropriately considered by the arbitrator. *ManorCare Health Servs., Inc. v. Stiehl*, 22 So. 3d 96, 99 (Fla. Dist. Ct. App. 2009).

*Bradford v. Robert Peltier Nissan Pontiac*, 2007 WL 865685 (E.D. Tex. Mar. 15, 2007). More generally, as discussed below, courts routinely apply arbitration agreements to pre-existing claims without expressing any concern that it is procedurally unconscionable to do so. *See, e.g., Nature's Prods., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1319 (S.D. Fla. 2013).

Third, Plaintiff's complaint that "Fandango presented the agreement on a take-it-or-leave-it basis, and provided Plaintiff with no meaningful choice" is factually and legally wrong. Plaintiff could easily have purchased tickets for the exact same screenings without assenting to Fandango's arbitration agreement – either by using another online service or simply buying them at the box office. In any event, the law of this circuit is clear that "a contract is not procedurally unconscionable simply because it is a contract of adhesion. *In re Checking Acct. Overdraft Litig.*, 2021 WL 1292305, at *6 (11th Cir. Apr. 7, 2021).

Finally, Plaintiff completely ignores his burden to demonstrate that arbitration is unconscionable as a matter of substance as well as procedure. *See, e.g., Robinson v. NBC Universal Cable*, 2018 WL 8620154, at *2 (S.D. Fla. Apr. 23, 2018) (quoting *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 (Fla. 2014)). Thus, even if the Court were to find procedural unconscionability, that alone would not suffice to excuse Plaintiff's contractual duty to arbitrate.

## II. Plaintiff's Argument That His Claim Is Not Arbitrable Is Misdirected and Wrong

Plaintiff's only remaining argument against arbitration reduces to a quarrel about the arbitration agreement's scope. That is, Plaintiff contends that even if he can be compelled to arbitrate *some* kinds of claims against Fandango (such as a claim that it overcharged his credit card), he cannot properly be compelled to arbitrate the *specific* claim asserted in the FAC because it allegedly began to accrue before he first assented to arbitration. The argument suffers several procedural and substantive flaws, all of them fatal.

As a threshold procedural matter, Plaintiff's argument is not one that this Court may consider. As Fandango noted in its initial brief, when parties to an arbitration agreement use "clear and unmistakable" language to delegate gateway questions such as the scope of arbitrable disputes, "a court may not override the contract. In those circumstances, a court possesses no

power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529-31 (2019). Fandango's Terms used precisely the kind of delegation language that both the Eleventh Circuit and the Court in *Bell I* held sufficient to delegate to the arbitrator a plaintiff's challenge to the applicability of an arbitration agreement to the pertinent claims. *See Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1267 (11th Cir. 2017); *Bell I*, 2020 WL 5742189, at *3.[4] Plaintiff does not take issue with a single word of that delegation argument. As a result, the Court should disregard Plaintiff's arguments about the arbitration agreement's scope.

  Even if the Court considers the scope argument on the merits, there are several reasons it should conclude that Plaintiff is bound to arbitrate his claim regardless of when the asserted cause of action began to accrue. Plaintiff's reading of the arbitration agreement's scope is incompatible with its text. The agreement consistently and explicitly uses broad terms to describe the scope of claims to which it applies. The title of the arbitration agreement is "**BINDING ARBITRATION OF *ALL* DISPUTES**." Song Decl. Ex. B (boldface in original, italics added). The agreement's preamble recites that arbitration is a more efficient way "to resolve *any* disputes or disagreements that you may have with us." *Id*. (emphasis added). It then gives notice that the customer is agreeing to submit to binding arbitration "*any* dispute or disagreement with us regarding or relating to" within any of three broad categories. *Id*. (emphasis added).[5] The body of the agreement then recites that Fandango "will make every reasonable effort to informally resolve *any* complaints, disputes, or disagreements that you may have with us." *Id*. (emphasis added). Finally, in the event informal dispute resolution fails, the agreement provides for binding arbitration to resolve "*any* complaint, dispute, or disagreement you may have against Fandango

---

[4] The arbitration agreement here gives the arbitrator "exclusive authority to resolve any dispute arising under or relating to the validity, interpretation, applicability, enforceability or formation of these Terms and/or these arbitration provisions[.]" Song Decl., Ex. B.

[5] The three categories are "(i) your use of or interaction with the Services, (ii) any purchases or other transactions or relationships with Fandango, or (iii) any data or information you may provide to Fandango or that Fandango may gather in connection with such use, interaction or transaction[.]" *Id*. Fandango explained in its initial brief why Plaintiff's sole cause of action falls into every one of those categories. *See* ECF 26 at 15-16. Plaintiff has not even attempted to refute the point and has therefore waived any argument to the contrary.

… arising out of, relating to, or connected in *any* way with our Terms of Use, our Privacy Policy, our Terms and Policies, or any Fandango Transactions or Relationships[.]" *Id.* (emphasis added).

Each of those unambiguous uses of "all" and "any" precludes any finding that the parties imposed a temporal limitation on the scope of their arbitration agreement. *See*, *e.g.*, *Perera v. H & R Block E. Enters., Inc.*, 914 F. Supp. 2d 1284, 1288-89 (S.D. Fla. 2012), (where the parties' agreement to arbitrate "any and all" employment-related claims "contain[ed] no temporal limitation[,]" it "unmistakably cover[ed] claims or disputes that accrued before Plaintiff signed the Agreement"); *see also Nature's Prods., Inc.*, 990 F. Supp. 2d at 1319 (finding agreement "clear and unambiguous with respect to its scope: it applies to 'any and all products….' This broad provision does not limit the covered products by … time.").[6]

The Notice at the top of the Terms to which Plaintiff assented also makes clear that the arbitration agreement applies to causes of action that accrued before the agreement's existence. Specifically, the Terms' text begins with a "**NOTICE OF ARBITRATION PROVISIONS**" that explicitly includes the following text: "**do not use the Services if you are unwilling to arbitrate *any* disputes you may have with us**[.]" Song Decl. ¶ 8 & Ex. B (boldface in original, italics added). That notice is placed so as to prompt a user to make an informed decision about committing to arbitration ***before*** manifesting an intent to do so by clicking the "Complete My Purchase" button. Thus, at the moment a user gets constructive notice of the arbitration

---

[6] Plaintiff wholly ignores these cases and others like them in this district that vindicate the plain meaning of such broad terms as "any" and "all." Instead, he cites six inapposite cases – none from within this Circuit or applying Florida law – to support his assertion that "[t]he vast majority of courts to consider the issue have sound such 'retroactive' or 'post-hoc' consent to be invalid." Response at 7. But not a single one of those cases considered whether an arbitration agreement that explicitly applied to "any" or "all" claims within a category could not be applied to claims within that category that arose prior to the agreement. The sole case involving an arbitration agreement did not involve the scope issue Plaintiff raises here. *See Kauders v. Uber Techs., Inc.*, 2019 WL 510568, at *5 (Mass. Super. Ct. Jan. 3, 2019) ("It is unclear at what point and by what action, if any, the App user agrees to the 'Terms & Conditions and Privacy Policy.' Uber therefore cannot meet its burden to show acceptance of the on-line terms, including the Arbitration Clause ***for purposes of contract formation***.") (emphasis added). Moreover, that decision has since been remanded in an opinion that makes no mention at all of the timing issue Plaintiff mischaracterizes. *See Kauders v. Uber Techs., Inc.*, 159 N.E.3d 1033 (Mass. 2021).

agreement, the present-tense phrase "any disputes you may have with us" applies only to potential causes of action that have already begun to accrue (whether the customer is aware of their existence or not). No other causes of action could exist at that moment, although additional ones could of course accrue in the future after the parties have entered the agreement to arbitrate. Thus, the natural reading of the arbitration agreement is that it applies to "all" disputes between the customer and Fandango, regardless of whether they arose before or after the customer assented to arbitration.

Plaintiff claims that Fandango unlawfully intercepted his communications over a course of his three to six visits to Fandango's website. *See* FAC ¶¶ 23-24. On at least two of those visits he assented to arbitrate "any" and "all" claims he had against Fandango, without any temporal limitation. *See* Pallister Decl. ¶ 6.[7] Plaintiff is thus obligated to arbitrate his claim against Fandango regardless of whether that claim accrued before he agreed to assent or relates to visits to Fandango's site where he did not make a purchase. This makes sense. Excluding some claims based on when they arose would force a customer with disputes arising both before and after an arbitration agreement to litigate pre-agreement claims in court and post-agreement claims in arbitration, waste resources on jurisdictional disputes, and risk inconsistent results. Plaintiff points to no case where a court has taken this approach.

For the reasons explained above, Fandango respectfully requests that the Court order Plaintiff to arbitrate his claims against Fandango on an individual basis pursuant to the parties' arbitration agreement and dismiss the First Amended Complaint without prejudice.[8]

---

[7] For this reason, Plaintiff's argument fails even on its own terms. Plaintiff's ***only*** cause of action is a single, unitary claim that Fandango violated his rights through a course of conduct that continued after he agreed to resolve any dispute through individual arbitration.

[8] As Fandango previously argued, the Court should dismiss the case if it compels arbitration of the sole claim in the First Amended Complaint because no live dispute will remain to be resolved in this forum. ECF 26 at 16-17 (citing cases). Here again, Plaintiff has completely ignored Fandango's argument and therefore waived any disagreement on the point.

Dated: May 6, 2021

Respectfully submitted,

By: /s/ Nury Siekkinen
    Nury Siekkinen
    Florida Bar No. 1015937
    Primary email: nury@zwillgen.com
    **ZWILLGEN PLLC**
    1900 M Street NW, Suite 250
    Washington, DC 20036
    Telephone: (202) 296-3585
    Facsimile: (202) 706-5298

*Attorney for Defendant Fandango Media, LLC*

## CERTIFICATE OF SERVICE

I certify that on May 6, 2021, a true and accurate copy of the foregoing has been electronically filed with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

   /s/ Nury Siekkinen
Nury Siekkinen (Florida Bar No. 1015937)

## SERVICE LIST

Andrew J. Shamis
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
ashamis@shamisgentile.com

Scott Edelsberg
EDELSBERG LAW, PA
20900 NE 30th Avenue, Suite 417
Aventura, Florida 33180
scott@edelsberglaw.com

Manuel Hiraldo
HIRALDO P.A.
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, Florida 33301
MHiraldo@Hiraldolaw.com