UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:21-cv-80466-RAR

JASON GOLDSTEIN, individually and
on behalf of all others similarly situated,

                Plaintiff,

v.

FANDANGO MEDIA, LLC,

                Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION [ECF No. 26]

Currently before me is the Renewed Motion to Compel Arbitration ("Motion") filed by Defendant Fandango Media, LLC ("Fandango"). ECF No. 26. It was referred to me by the Honorable Rodolfo A. Ruiz, II for appropriate disposition. ECF No. 28. I have reviewed Fandango's Motion, Plaintiff Jason Goldstein's ("Mr. Goldstein") Opposition to Fandango's Motion (ECF No. 29), and Fandango's Reply in Support of its Motion (ECF No. 31), along with all included exhibits. For the reasons contained herein, I **RECOMMEND** that Fandango's Motion be **DENIED**.

## BACKGROUND

On February 8, 2021, Mr. Goldstein initiated this class action lawsuit in state court against Fandango, which owns a website that provides movie information and ticket purchasing services. ECF Nos. 1-2, 26 at 7. Mr. Goldstein, who repeatedly used Fandango's website to purchase movie tickets, claims that Fandango tracked his activity online in violation of the Florida Security of Communications Act ("FSCA").

1

ECF No. 1-2. Thereafter, Fandango removed this lawsuit to federal court based on diversity of citizenship (ECF No. 1), and Mr. Goldstein filed an Amended Class Action Complaint, realleging his sole claim under the FSCA (ECF No. 24).

In its motion, Fandango claims that Mr. Goldstein's lawsuit is barred by an Arbitration Agreement found on its webpage. ECF No. 26 at 12. Specifically, Fandango contends that each time Mr. Goldstein used its website, "he assented to a valid and binding agreement to individual arbitration of any dispute that might arise between the parties." *Id.* at 7.

Fandango's webpage has a bright orange button labeled "COMPLETE MY PURCHASE." ECF No. 26-2. Immediately below the orange button is a notice in much smaller gray print that reads, "By clicking the Complete My Purchase button, you agree to the Privacy Policy and the Terms and Policies, and will be charged for this order." ECF No. 26-2. The phrase "Terms and Policies" contains a blue hyperlink that brings the user to another webpage setting forth the Arbitration Agreement. ECF No. 26-3. An undisputed visual representation is provided below.



ECF Nos. 26-2, 29 at 5.

Mr. Goldstein contends that he did not knowingly enter into an agreement to

arbitrate because the "inconspicuous" arbitration language was "buried below the 'Complete My Purchase' button" and that "once he clicked to complete his purchase, there was no reason for [him] to continue scrolling down the page to view the purported arbitration language at issue." ECF No. 29 at 1-2. Indeed, Mr. Goldstein's declaration states that, in fact, he "did not scroll down to review the remainder of the page . . . ." ECF No. 29-1 ¶ 4.

## **LEGAL STANDARD**

According to the Federal Arbitration Act ("FAA"), a court should only direct the parties to proceed with arbitration once it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. After all, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Therefore, it is clear that the Court, not an arbitrator, should decide whether the parties entered into an arbitration agreement in the first instance. *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752, 2020 WL 5742189, at *4 (S.D. Fla. May 13, 2020), *report and recommendation adopted*, No. 19-CIV-60752-RAR, 2020 WL 5639947 (S.D. Fla. Sept. 21, 2020).

Courts should apply a summary judgment-like standard in determining whether an arbitration agreement has been formed. The FAA provides for a trial to determine issues of fact regarding whether an arbitration agreement has been formed. 9 U.S.C. § 4. However, in *Bazemore v. Jefferson Cap. Sys., LLC*, the Eleventh

Circuit allowed district courts to determine whether an arbitration agreement has been formed as a matter of law when "'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

## ANALYSIS

Although the FAA establishes the enforceability of arbitration agreements, "state law governs the interpretation and formation of such agreements."[1] *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 482 U.S. 483 (1987)). The State of Florida recognizes two types of internet agreements: clickwrap agreements and browsewrap agreements. *See MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d Dist. Ct. App. 2018) (citing *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th Dist. Ct. App. 2018)). A clickwrap agreement occurs when a user must click a checkbox to acknowledge that the user has read the relevant terms and conditions before the user can continue. *Vitacost.com*, 210 So. 3d at 762. A browsewrap agreement occurs when a website provides a link to the terms and conditions but does not require the user to click a separate acknowledgement checkbox before continuing. *Id.* Fandango's website contained a browsewrap agreement.

Clickwrap agreements are generally enforceable, but browsewrap agreements are not. *Id.* Browsewrap agreements are only enforced when (1) the user has actual

---

[1] It appears undisputed that Florida law applies given that the Amended Complaint alleges the violation of a Florida statute, and Fandango relies on Florida law in its motion.

4

knowledge of the terms and conditions, or (2) the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice. *Id.* In deciding whether a user was put on sufficient inquiry notice, such that the user assented to the website's terms in a browsewrap agreement, courts evaluate the conspicuousness and placement of the hyperlink to the terms and conditions as well as whether the site provided notice that a specific action would demonstrate acceptance of those terms. *Bell*, 2020 WL 5742189, at *6 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (holding that the "conspicuousness and placement" of the hyperlink and "the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement").

### 1. There is No Genuine Dispute as to the Material Facts

Here, the facts of Fandango's website design as it existed when Mr. Goldstein visited it and clicked on the COMPLETE MY PURCHACE button are not disputed by either party. Thus, I find that there is no genuine dispute as to any material fact concerning the formation of an arbitration agreement. As noted above, in determining whether an arbitration provision contained in a browsewrap agreement is binding, courts consider whether the hyperlink to the website's terms and conditions "is conspicuous enough to put a reasonably prudent person on inquiry notice." *Bell*, 2020 WL 5742189, at *5 (citing *MetroPCS*, 273 So. 3d at 1028). This determination is made as a matter of law because the court looks only to the design of the website in deciding whether a reasonably prudent user would be on notice of the arbitration agreement, without considering the actions of any individual user. *See Bell*, 2020 WL 5742189,

at *5–*8 (finding the website design put a reasonably prudent user on inquiry notice of an arbitration agreement as a matter of law). Therefore, my analysis of whether Fandango's notice was sufficiently conspicuous is limited solely to the design of Fandango's website.[2]

### 2. Formation of the Arbitration Agreement

The second part of the inquiry requires me to apply the "reasonably prudent person" standard to the undisputed facts of this case. *Bell v. Royal Seas Cruises, Inc.* is instructive. There, the court applied the "reasonably prudent person" standard to a website's browsewrap agreement which stated, "I understand and agree to email marketing, the <u>Terms & Conditions</u> which includes mandatory arbitration and <u>Privacy Policy</u>." *Id.* (underlined phrases were to hyperlinks in original). This notice was provided immediately above a large, green button marked "Continue." *Id.* A visual representation is provided below.



*Id.*

---

[2] Mr. Goldstein argues that Fandango has subsequently changed its website to display the notice directly *above* the "Complete My Purchase" button, which is a "tacit concession" that the previous version of the website was "inadequate." ECF No. 29 at 5. Any version of the website other than the one giving rise to Mr. Goldstein's claim is irrelevant. So, I have not considered any change Fandango may have made to its website.

The Court in *Bell* concluded that the notice was conspicuous enough to put a reasonably prudent person on inquiry notice of the Terms and Conditions, including the arbitration agreement, as a matter of law. *Id.* at *7. In arriving at this conclusion, the Court focused on three features of the website design. *Id.* First, the website placed the notice of its Terms and Conditions "directly above" the Continue button and did not "tuck away" the notice. *Id.* The Court emphasized that this placement of the hyperlink "directly over the Continue button . . . would strongly imply to a reasonable user a connection between the 'I understand and agree' statement and clicking Continue." *Id.* Second, the Court highlighted the significance that the notice specifically advised the user that the Terms and Conditions included a mandatory arbitration provision; thus, the notice did not merely inform the user that unspecified terms and conditions existed. *Id.* Third, users were required to take the affirmative act of clicking the "Continue" button and were notified that this constituted acceptance of these terms. *Id.* (finding that the website's language constituted explicit notice that "continued use will act as a manifestation of an intent to be bound"). Based on these distinct design elements of the website's browsewrap agreement, the Court in *Bell* concluded that an agreement to arbitrate had been formed.

Fandango's notice is distinguishable from the one in *Bell* in several important respects, and thus, warrants a different result. In fact, the only similarity to the notice in *Bell* is that Fandango's notice advises the user that taking action constitutes acceptance ("By clicking the Complete My Purchase button, you agree to the . . . Terms and Policies"). Applying the criteria used in *Bell,* Fandango's notice is deficient

7

because of its placement on the webpage and because the notice fails to alert the user of the arbitration agreement.

First, I find that the inconspicuous appearance and poor placement of Fandango's notice negates its purportedly intended purpose. It is significant that Fandango's notice regarding the binding nature of its Terms and Policies was placed *beneath* the large, orange, all-capitalized, COMPLETE MY PURCHASE click button, rather than above it. *See Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 31–32 (2d Cir. 2002) (C.J. Sotomayor) (finding that a reasonably prudent person may not be aware of a notice of license terms below a download button); *see also Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("[C]lose proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice."). It is not reasonable to expect a user to continue reading below the highly conspicuous purchase button. Moreover, the comparatively miniscule size of the typeface used to notify the purchaser that he is agreeing to certain "Terms and Policies" and its light grey color render it practically unreadable. *Cf. Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974, 980–981 (E.D. Cal. 2000) (finding that there was no mutual assent as a matter of law when notice of a license agreement were in small gray font because website users may not be aware of the license agreement).

Second, the language used in Fandango's browsewrap agreement is insufficient to place a reasonable user on notice that completing a purchase represents a waiver of the user's right to file a lawsuit compelling Fandango's appearance in court. In Florida, to incorporate a collateral document into an

agreement, the agreement must: (1) specifically provide that the collateral document is being incorporated; and (2) sufficiently describe the collateral document being incorporated. *Vitacost.com, Inc.*, 210 So. 3d at 764–65 (citing *BGT Grp., Inc. v. Tradewinds Engine Servs.*, LLC, 62 So.3d 1192, 1194 (Fla. 4th Dist. Ct. App. 2011)). Here, Fandango's Arbitration Agreement is a collateral document, but Fandango's notice does not sufficiently describe it so that the user is on notice of the mandatory arbitration provision, nor does Fandango specifically advise the user that an agreement to arbitrate is being incorporated into its Terms and Policies. Unlike the notice in *Bell*, which specifically stated that its Terms and Conditions "include[] mandatory arbitration," Fandango's notice only contains a hyperlink to its Terms and Policies without referencing the arbitration agreement at all. Therefore, Fandango's notice does not indicate, much less "sufficiently describe," the collateral Arbitration Agreement that is contained in its Terms and Policies.

Given the absence of any disputed material facts, I find, as a matter of law, that a reasonable user would not be on inquiry notice of Fandango's arbitration provision, and thus, an agreement to arbitrate was never formed between Fandango and Mr. Goldstein. Accordingly, I recommend that Fandango's Motion to Compel Arbitration be denied.

Finally, to the extent the parties disagree about the relevant scope of Fandango's Arbitration Agreement, this issue should be moot based on my finding that an Arbitration Agreement was never formed.

## RECOMMENDATION

Based on the foregoing, I **RECOMMEND** that Fandango's Renewed Motion to Compel Arbitration (ECF No. 26) be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, II, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C).

**If counsel does not intend to file objections, counsel shall file a notice to that effect within FIVE DAYS of this report and recommendation.**

**DONE AND SUBMITTED** in Chambers this 27th day of July, 2021, at West Palm Beach in the Southern District of Florida.

*/s/ Bruce Reinhart*

_____
BRUCE REINHART
United States Magistrate Judge